IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMAZING CARE HOME HEALTHCARE SERVICES, LLC, | : | Civil Action |
| | : | |
| | : | No. 26-CV-714 |
| CHRISTOPHER KEAR | : | |
| | : | |
| and JOSEPHINE KILIKPO, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | | |
| | | |
| LORI CHAVEZ-DEREMER, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR (DOL), | | |
| | | |
| ANDREW ROGERS, ADMINISTRATOR, WAGE AND HOUR DIVISION, DOL | | |
| | | |
| and U.S. DEPARTMENT OF LABOR | | |
| | | |
| Defendants | | |

**PLAINTIFFS' COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

**PARTIES**

1. Plaintiff Amazing Care Home Healthcare Services, LLC ("Amazing Care"), is a third party agency which processes service and payroll documents for Direct Care Workers who provide in-home companionship and assistance services to children with special needs, elderly and other disabled persons in Pennsylvania. Plaintiff is headquartered at 1714 Grant Avenue, Suite 3, Philadelphia, PA 19115.

2. Plaintiff Christopher Kear is a principal of Amazing Care.

3. Plaintiff Josephine Kilikpo is Director of Nursing for Amazing Care.

1

4. Defendant Lori Chavez-DeRemer is Secretary of U.S. Department of Labor. Plaintiffs sue Chavez-DeRemer in her official capacity.

5. Defendant, United States Department of Labor ("DOL") is a federal cabinet agency and an agency within the meaning of 5 U.S.C. §552(f). The DOL conducts investigations of violations or potential violations by employers of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. ("FLSA"), and seeks to hold employers liable for claims for back wages.

6. Defendant Andrew Rogers is the Administrator of the DOL's Wage and Hour Division. The FLSA authorizes the creation of a Wage and Hour Division under the direction of an Administrator. *See* 29 U.S.C. §204. The Wage and Hour Division promulgated the sub-regulatory guidance at issue in this case. Plaintiffs sue Rogers in his official capacity.

## **INTRODUCTION**

7. Plaintiffs seek a declaration that the skilled and non-skilled Direct Care Workers at issue in this action are exempt from FLSA minimum wage and overtime requirements under the Companionship Exemption (29 U.S.C. §213(a)(15)) and the Live-In Exemption (29 U.S.C. § 213(b)(21)), respectively, of the FLSA and request an order enjoining the DOL from further pursuing claims for back wages on behalf of the Direct Care Workers.

8. Plaintiffs also seek a declaration that the revised regulation at issue in this action, 29 C.F.R. 552, 109 and 29 C.F.R. 552.6, effective January 1, 2015, are unlawful and unenforceable, including, but not limited to, as they were established in an unlawful, arbitrary, and capricious manner which violated the standards and requirements of the Administrative Procedure Act, 5 U.S.C. §702, and are inconsistent with the FLSA and its terms, provisions, and intents.

9. Plaintiffs further seek a declaration that third party agencies are not employers of Direct Care Workers, but instead payroll administrators. In the alternative, Plaintiffs seek a declaration that the States and private companies with which the States contract for administration of the Medicaid Waiver Programs are joint employers of the Direct Care Workers.

10. The majority of the Direct Care Workers referenced below provide in-home companionship services to pediatric, elderly and other disabled family or household members of low-income families in Pennsylvania through Pennsylvania's Medicaid Waiver Programs.

11. Under the Medicaid Waiver Program, the federal government waives medical assistance rules intended for institutional care and allows States to use Medicaid reimbursement funds to provide care to pediatric, elderly and other disabled persons in their homes. State agencies administer the Medicaid Waiver Program by contracting with private intermediary entities which determine the recipients' eligibility, create individual service plans, and approve Providers of in-home services. The Providers, which include third party agencies such as Plaintiff Amazing Care, then engage, coordinate training, and complete payroll services for the Direct Care Workers. The third party agencies receive Medicaid reimbursement funds from which the agencies pay the Direct Care Workers' wages, administrative costs, and FICA taxes.

12. Third party agencies operate for the benefit of the recipients of in-home services and Pennsylvania's Medicaid Waiver Programs and Medicaid by processing the extensive paperwork necessary to receive Medicaid and Medicaid Waiver Program funding for the Direct Care Workers. The Medicaid Waiver Program and Medicaid provide for a flat rate of hourly pay and does not pay any increased amount for overtime hours worked by Direct Care Workers.

13. From 1975 to 2015, in establishing their operations and pay practices, third party agencies relied upon the Companionship and Live-In Exemption from minimum wage and overtime obligations which might otherwise be applicable under the FLSA, especially regarding Direct Care Workers paid by Medicaid and by the Medicaid Waiver Program. 29 U.S.C. §213(a)(15); 29 U.S.C. §213(b)(21).

14. The language of these exemptions demonstrates that Congress intended for the exemptions to apply to Direct Care Workers, including those workers with whom third party agencies such as Plaintiffs coordinate. See 29 U.S.C. §213(a)(15) Companionship Exemption; 29 U.S.C. §213(b)(21) Live-In Exemption. In 2013, the DOL arbitrarily and capriciously proposed revising the regulation corresponding to these exemptions to preclude third party agencies from claiming the exemptions. The revised regulation came into effect January 1, 2015, thus reversing four decades of interpretation and application and contradicting both the language of the Companionship and Live-In Exemptions and the intent of Congress to encourage at-home care the elderly and disabled.

15. DOL has targeted third party agencies and used the revised regulation to unleash its full investigative and prosecutorial powers upon them, including Amazing Care, asserting claims for enormous amounts of back wages. The prosecution of Amazing Care continues. See *Su v. Amazing Care et al.*, 24-cv-00190, (E.D. Pa.)(Savage, J.). If the DOL is successful in pursuing such claims, third party agencies such as Amazing Care will be unable to continue their business operations and an untold number of elderly and disabled care recipients will be forced into nursing homes or other institutions to find adequate care.

16. Under recent Supreme Court rulings, however, the revised regulation is invalid and unenforceable, and the Companionship and Live-In Exemptions should once again be available to third party agencies.

## JURISDICTION AND VENUE

17. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 2201(a). Jurisdiction is also proper under the judicial review provisions of the Administrative Procedure Act.

18. Plaintiffs' request for declaratory and injunctive relief is consistent with 5 U.S.C. §§705 and 706, and authorized by 28 U.S.C. §§2201 and 2202.

19. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) and (e)(1). Defendants are United States agencies or officers sued in their official capacities. Plaintiffs conduct business within the Eastern District of Pennsylvania, and substantial parts of the events giving rise to Plaintiffs' claims occurred and are continuing to occur within this judicial district.

## FACTS

**A. Plaintiff Amazing Care**

20. Plaintiff Amazing Care is a third party agency that registers and conducts payroll services regarding Direct Care Workers.

21. To provide care through the Medicaid Waiver Program, family members must complete and file necessary paperwork with the Pennsylvania Medicaid agency to become Direct Care Workers and collect payment for hours worked as a Direct Care Worker.

5

22. Amazing Care's Direct Care Workers provide care, fellowship, and protection services for the care recipients. The care activities do not exceed twenty percent (20%) of the total activities performed by the Direct Care Workers.

23. Amazing Care's business model and operations were developed by relying upon the Companionship Exemption and the Live-In Exemption, including to set competitive and sufficient hourly rates for Direct Care Workers that were adequately covered by the Medicaid Waiver Program reimbursement rate.

24. It is difficult for third party agencies such as Amazing Care to attract Direct Care Workers to perform the services.

    **B. The Medicaid Waiver Program in Pennsylvania**

25. Pennsylvania participates in the Medicaid Waiver Program, through the Pennsylvania Department of Human Services. Pennsylvania retains authority over the administration and implementation of the Waiver Program.

26. Under the Medicaid Waiver Program, the care recipient completes an application for Home and Community-Based Services that is specific to his or her needs, such as for persons over the age of sixty (60) ("the Aging Waiver") or children who have a disability (special needs).

27. Pennsylvania administers the Waivers in accordance with applicable laws and regulations; maintains oversight of contracted functions; ensures that waiver services are provided by qualified enrolled Medicaid Assistance Providers; and administers waiver services to care recipients who meet program eligibility requirements.

28.     The care recipients then choose a Medicaid home health plan, called Community HealthChoices for adults. The health plan then develops and retains exclusive control over care assessments and approves individual service plans for care recipients.

29.     The Community HealthChoices or Managed Care Plan organization works with care recipients and their medical providers to create the individual service plans, which describe the waiver services, their projected frequency, the type of Provider for each service, and the amount of hours of service. Pennsylvania's Medicaid agency must approve the individual service plans. Pennsylvania retains authority over Direct Care Workers, including supervision over services provided and hours worked.

30.     Third party agencies like Amazing Care enroll as Medical Assistance Providers ("Providers"). The third party agencies then engage and coordinate training for Direct Care Workers to be assigned to the care recipients. The third party agencies collect Direct Care Worker timesheets for payroll processing, collect work reports for compliance with individual service plans, and complete the necessary paperwork to obtain the Medicaid funding to pay Direct Care Workers.

31.     Pennsylvania's Medicaid agency sets a straight reimbursement rate per hour for services under the individual service plan and does not account for additional compensation for overtime hours or holiday pay.

32.     The third party agencies like Amazing Care then set a competitive hourly rate of pay within the restrictions of the reimbursement rate to remain competitive with other third party agencies and provide a living wage to Direct Care Workers.

### C. The DOL's Position Regarding the Companionship and Live-In Exemptions

33. DOL has taken the position that when the Direct Care Workers are family members of the care recipient, they will only be paid for the number of hours approved in the individual service plans. The DOL considers any work performed outside of the approved hours to be "of a familial nature" and therefore not compensable. See DOL Fact Sheet #79F.

34. The DOL's position is contrary to one of the fundamental purposes of the FLSA, namely, to provide for compensation for all hours worked by workers.

35. The DOL fails to recognize that there is a fundamental conflict between the Medicaid Waiver Program, as currently administered, and the FLSA. The FLSA requires payment of time-and-a-half for overtime hours if the employee does not fall under an exemption or exception. However, the Medicaid Waiver Program pays only a set hourly rate, which does not increase for overtime hours even when accounted for in the individual service plan.

36. The Companionship and Live-In Exemptions permit third party agencies to operate off the thin margin between the Medicaid reimbursement rate and the Direct Care Workers' hourly rate of pay. The third party agencies must set a competitive and reasonable hourly rate within the constraints of the reimbursement to have Direct Care Workers continue to provide services.

37. The DOL simultaneously requires payment for all hours worked by Direct Care Workers, including overtime, while arbitrarily precluding third party agencies from claiming the Companionship and Live-In Exemptions. The DOL has systematically targeted third party agencies and placed an enormous and unsustainable financial burden upon them, thereby endangering the essential purpose of the Waiver Program, namely, to shift recipients away from institutional care and allow recipients to remain in their homes.

### D. DOL's Prosecution of Plaintiffs

8

38. In order to attract capable and reliable Direct Care Workers and have them provide services, Amazing Care set an hourly rate for work performed of $10.00/hour or more. This hourly rate is well above federal and Pennsylvania minimum wage of $7.25, provides sufficient funds for a living wage, and is fully covered by the Medicaid reimbursement rate. However, the Medicaid reimbursement rate is insufficient to fund time-and-a-half overtime premiums at this hourly rate.

39. DOL seeks to enforce 29 C.F.R. §552.109 by unleashing a prosecutorial campaign against Amazing Care. The DOL now seeks from Amazing Care millions of dollars in overtime wages and penalties, which Amazing Care is simply unable to afford under the Medicaid reimbursement rates. *See Su v. Amazing Care et al.*, 24-cv-00190, (E.D. Pa.)(Savage, J.).

40. DOL is also seeking an injunction against Amazing Care and is seeking to hold Amazing Care's owner and operator personally responsible for the asserted liabilities.

41. The DOL's targeting of Amazing Care threatens to put Amazing Care out of business. This would greatly harm the elderly and disabled care recipients served by Plaintiffs and countless other recipients served by the industry.

42. For the reasons more fully explained below, Plaintiff requests this Honorable Court to enter a declaratory judgment confirming that 29 C.F.R. §552.109 and 29 C.F.R. §552.106 are invalid, unenforceable, and contrary to Congressional intent, and that the referenced Direct Care Workers are exempt under the Companionship and Live-In Exemptions of the FLSA, and enter an order enjoining the DOL from further investigative and prosecutorial action against Plaintiffs.

43. As described above, Pennsylvania sets the reimbursement rate for Medicaid Waiver services and third party agencies such as Amazing Care have no say or power in setting the reimbursement rate, which rate does not increase for overtime hours.

44. DOL has sued Plaintiff, for overtime violations, asserting damages that may exceed $12 million. *See* 29 C.F.R. §216 (Penalties). The DOL may also seek injunctive relief against the principals of Plaintiffs, which could result in contempt or criminal charges related to any future violations of any injunctions.

45. The DOL's treatment of the Companionship and Live-In Exemptions as not applicable to Amazing Care places a crippling financial burden upon it, and threatens its ability to continue to serve elderly and disabled care recipients.

**E. 29 C.F.R §552.209 conflicts with a fair interpretation of 29 U.S.C. §213(a)(15).**

46. Under the fair interpretation requirement for exemptions established by the Supreme Court in *Encino Motorcars. LLC v. Navarro,* 584 U.S. 79, 88-89 (2018), Plaintiffs request this Honorable Court to fairly interpret the Companionship and Live-In Exemptions and confirm that they indeed apply to third party agencies such as Amazing Care.

47. The DOL's attempt to preclude Amazing Care from the Companionship and Live-In Exemptions is contrary to the terms, provisions, and intent of the FLSA and is beyond any authority granted to it, including by Congress and/or the FLSA or the Administrative Procedure Act. See 29 U.S.C. §213(a)(15); 29 U.S.C. §213(b)(21).

48. Congress intended to exempt companions and live-in workers to keep in-home services affordable for the elderly and disabled, regardless of their employer.

49. The DOL's enactment of the revised regulation at issue in this action flies in the face of and contradicts the explicit rejection by Congress of numerous prior attempts to preclude third party agencies from claiming the Companionship Exemption.

50. The Medicaid Waiver Program reimbursement method of payment for home care services has not changed since 2015. Third party agencies are reimbursed at the same rate regardless whether Direct Care Workers' hours exceed or fall below 40 hours.

51. Thus, the DOL's stance is contrary to the statutory language of the FLSA and the realities of the Medicaid Waiver Program and in-home care, and unnecessarily threatens to destroy Plaintiffs and other third party agencies.

> **F. Under the Circumstances Applicable to this Action, Third Party Agencies such as Amazing Care are Not Employers of Direct Care Workers for Purposes of the FLSA**

52. FLSA §203(d) defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d).

53. Under the circumstances applicable to this action, third party agencies such as Plaintiffs do not exercise the requisite amount of control over Direct Care Workers and their activities to qualify as employers under the FLSA definition of an employer.

54. Pennsylvania's Medicaid agency and/or private companies that contract with the state Medicaid agency: create the care recipients' individual service plan; approve the Direct Care Worker; set the training requirements for the Direct Care Worker; set the reimbursement rate for the services; and review and approve the hours and services performed by the Direct Care Worker.

55. The Direct Care Workers and the care recipient can stay together even if the Direct Care Worker and care recipient change third party agencies.

56. Third party agencies such as Amazing Care: ensure that the state-mandated training is completed by Direct Care Workers; collect reports and timesheets for submission to Pennsylvania; and process Direct Care Worker payroll before the reimbursement is received from Pennsylvania.

## CLAIM FOR RELIEF

## COUNT 1

## DECLARATORY & INJUNCTIVE RELIEF

### Contrary to Law / Exceeds Statutory Authority (5 U.S.C. §706(2)(A))

57. Plaintiffs incorporate by reference the statements and allegations set forth in each of the preceding paragraphs of this Complaint.

58. Under the APA, a court must "set aside agency action" that is "not in accordance with law." 5 U.S.C. §706(2)(A). The current versions of 29 C.F.R. §§552.109 and 552.6 conflict with the statutory text and purpose of the FLSA, including the Companionship Exemption (29 U.S.C. §213(a)(15)) and the Live-In Exemption (29 U.S.C. §213(b)(21)).

59. Denial of the Companionship and Live-In Exemptions to third party agencies conflicts with congressional intent and judicial interpretation of the FLSA, including *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018), which requires a fair reading of statutory exemptions.

60. By promulgating and enforcing regulations that contradict the text and purpose of the FLSA, the DOL has exceeded any authority granted to it by Congress, the FLSA, or the APA.

61. Plaintiffs are suffering and will continue to suffer substantial harm as a result of Defendants' unlawful enforcement of these regulations.

## COUNT 2

## DECLARATORY & INJUNCTIVE RELIEF

### Arbitrary and Capricious Agency Action (5 U.S.C. §706(2)(A))

62. Plaintiffs incorporate by reference the statements and allegations set forth in each of the preceding paragraphs of this Complaint.

63. Under the APA, a court must set aside agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. §706(2)(A).

64. One of the basic procedural requirements of administrative rulemaking is that an agency must provide adequate reasons for its decisions and articulate a rational connection between the facts found and the choice made. The agency's explanation must be sufficiently clear that its path may reasonably be discerned.

65. In revising 29 C.F.R. §§552.109 and 552.6, the DOL failed to provide adequate justification for a complete reversal of more than four decades of regulation and enforcement. The DOL disregarded longstanding reliance interests of third party agencies, including Plaintiffs, and failed to account for the practical and financial realities of the Medicaid Waiver Program.

66. The DOL's actions are therefore arbitrary and capricious and cannot carry the force of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Declare 29 C.F.R. §§552.109 and 552.6 invalid, unenforceable, and contrary to law;

b. Vacate the regulations;

c. Enjoin Defendants from further enforcement of these regulations against Plaintiffs; and

d. Grant such other and further relief as the Court deems just and proper.

/s/ Claude I. Schoenberg

Claude I. Schoenberg (PA I.D. No. 56222)
SCHOENBERG LAW OFFICE
363 Bala Ave.
Bala Cynwyd, PA  19004
610-908-6129
*Attorney for Plaintiffs*

Dated: February 4, 2026